## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Relational, LLC, a Delaware Limited Liability Company | ) ) ) | FILED: JULY 2, 2008 <br> 08CV3777 <br> JUDGE DER-YEGHIAYAN |
| Plaintiff, | ) ) | MAGISTRATE JUDGE COX <br> MKH |
| v. | ) No. ) | |
| Bestel Communications, Inc., a Georgia corporation | ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff Relational, LLC, ("Relational") by its attorneys, for its Complaint against

Defendant Bestel Communications, Inc. ("Bestel"), states as follows:

## PARTIES

1.      Relational is an Delaware Limited Liability Company whose sole member is

Rosemont Leasing, Inc.  Rosemont Leasing, Inc. is a Delaware corporation with its principal

place of business located in Illinois.

2.      On information and belief, Bestel is a Georgia corporation with its principal place

of business located in Georgia.

## JURISDICTION AND VENUE

3.      Jurisdiction is predicated on 28 U.S.C. § 1332(a)(1) in that Plaintiff is a citizen of

the States of Delaware and Illinois and defendant is a citizen of the State of Georgia, and the

amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

4.      Venue is proper in this district because 28 U.S.C. § 1391(a) in that a substantial

part of the events giving rise to the claim occurred in this district, and, pursuant to the contract

executed by the parties which forms the basis for this claim, each of the defendants consented to personal jurisdiction and venue in this district.

## COUNT I

### (Detinue)

5.     On or about June 26, 2007, Relational and Bestel entered into a written Master Equipment Lease Agreement (the "Agreement") whereby Bestel agreed to lease certain described equipment (the "Equipment") listed in various schedules (the "Schedules") to be executed incorporating the terms of the Agreement and to pay Relational Base Rental payments as set forth in the Schedules.  A true and correct copy of the Agreement is attached hereto as Exhibit A.

6.     On or about July 17, 2007, Bestel and Relational entered into Schedule 001 pursuant to the Agreement, and Bestel accepted delivery of the Equipment.  A copy of this Schedule, together with a list of the Equipment is attached hereto as Exhibit B.  The Agreement granted Relational a security interest in the Equipment described in Schedule 001.

7.     On or about August 16, 2007, Bestel and Relational entered into Schedule 002 pursuant to the Agreement, and Bestel accepted delivery of the Equipment.  A copy of this Schedule, together with a list of the Equipment is attached hereto as Exhibit C.  The Agreement granted Relational a security interest in the Equipment described in Schedule 002.

8.     The Agreement, Schedule 001 and Schedule 002 required quarterly rental payments for a period of twelve quarters and provided that, in the event of a default in the payment of any payment required therein, the holder of the Lessor's interest could terminate the Agreement and require the Lessee to deliver the Equipment to the holder of the Lessor's interest.

9.     Relational perfected its security interest by filing Uniform Commercial Code

2

financing statements in the appropriate jurisdiction.  Copies of these financing statements are attached hereto as Exhibit D.

10.    Bestel has defaulted under the terms of the Agreement by failing to make the rental payments required to be made under both Schedule 001 and Schedule 002.

11.    Relational has performed all terms and conditions required of it to be performed under the Agreement, Schedule 001 and Schedule 002.

12.    Plaintiff has made demand upon Bestel to return the Equipment, but Bestel has failed and refused to do so.

13.    Relational has been unable to secure possession of the Equipment through peaceful means, and therefore claims a return of the Equipment, or $59,000.00, its value.

14.    Bestel's wrongful conduct has deprived Relational of the use and benefit of the Equipment, and Relational has been damaged thereby in an amount to be proven at trial.

WHEREFORE, Relational, LLC, Plaintiff herein, respectfully prays that a judgment be entered in its favor and against Defendant Bestel Communications, Inc. as follows:

(a)    For a turnover of the Equipment instanter;

(b)    For damages for the detention of the Equipment; and

(c)    For such other and further relief in its favor as the Court deems just and appropriate.

## COUNT II

### (Breach of Contract)

15.    Relational repeats and realleges paragraphs 1 through 11 of Count I as and for paragraph 15 of this Count II.

3

16.    The Agreement, Schedule 001 and Schedule 002 provide that, in the event of default, Relational is entitled to declare immediately due and payable an amount equal to the Casualty Value set forth in Schedule 001 and Schedule 002, which amount, together with all accrued and unpaid rental payments and other charges permitted by the Agreement, Schedule 001 and Schedule 002 shall be immediately due.

17.    As of May 1, 2008, the Casualty Value set forth under Schedule 001 was $71,973.39.  As of May 1, 2008, the Casualty Value set forth under Schedule 002 was $98,213.95.  As of May 1, 2008, the accrued and unpaid rental payments and other charges due totaled $64,493.98.

18.    Pursuant to the terms of the Agreement, Schedule 001 and Schedule 002, Bestel is also obligated to pay any additional late charges and other costs of expenses of collection, including attorney's fees that may accrue until the date of judgment.

19.    Relational has made demand upon Bestel for payment of the amounts due and owing under the Agreement, Schedule 001 and Schedule 002, but Bestel has failed and refused to pay such amounts, or any portion thereof.

WHEREFORE, Plaintiff Relational LLC asks this Court to enter judgment in its favor and against Defendant Bestel Communications, Inc., in the amount of $234,681.32, plus any additional charges that may accrue until the date of judgment, plus expenses of collection, including reasonable attorneys fees, together with such other and further relief in Plaintiff's favor as the court deems just and appropriate.


Respectfully submitted,

4

Relational, LLC


By: __/s/ Kenneth B. Drost_____
    One of its Attorneys

Kenneth B. Drost, Esq.
Kenneth B. Drost, P.C.
111 Lions Drive, Suite 206
Barrington, Illinois 60010
(847) 381-1070
Attorney No. 03123292

```
08CV3777
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE COX
MKH
```

# EXHIBIT A

# MASTER EQUIPMENT LEASE AGREEMENT

# MASTER EQUIPMENT LEASE AGREEMENT



LESSOR:    RELATIONAL, LLC
ADDRESS:   3701 Algonquin Road, Suite 600
Rolling Meadows, IL 60008    Tel: (847) 818-1700

LESSEE:    BESTEL COMMUNICATIONS, INC.,
a Georgia Corporation
ADDRESS:   1328 Surrey Lane
Marietta, GA 30008

DATE: June 26, 2007

Lessee agrees to lease from Lessor the Equipment described in each related Schedule which is executed pursuant hereto. Each Schedule together with this Master Equipment Lease Agreement ("Master Lease") will constitute a separate lease for the Equipment subject thereto. In the event of any conflict between the Master Lease and any Schedule, the terms of the Schedule will control.

**SECTION 1. DEFINITIONS.**

"Affiliate" means Lessee's parent, or an entity in which Lessee or its parent own a controlling interest including, without limitation, all present affiliates of Lessee listed in Exhibit A hereto, if applicable.

"Base Rent" means the periodic basic rent due as set forth on a Schedule, or, where lease rate factors are shown on a Schedule, the periodic basic rent due will be the product of the Equipment cost and the applicable lease rate factor.

"Base Term" means the full number of consecutive calendar months set forth on the Schedule commencing on the Base Term Date (except that all references herein to month(s) or monthly will be deemed to mean quarter(s) or quarterly if the Schedule specifies that Base Rent is paid quarterly).

"Base Term Date" means the first day of the first full calendar month following the Date of Acceptance for all Units of Equipment to be leased under a Schedule.

"Casualty Value" will be determined for each Unit of Equipment by multiplying the percentage stated opposite the month of the Base Term by the Equipment cost as stated in the applicable Certificate of Acceptance, interpolating values if necessary, as set forth in the Casualty Value table included with each Schedule.

"Certificate of Acceptance" means an executed certificate signed by an authorized signatory of Lessee confirming the Date of Acceptance.

"Date of Acceptance" means the date of acceptance of a Unit of Equipment by Lessee or such other date if specified on the Schedule.

"Equipment" means the property and other Soft Costs described on a Schedule, including without limitation, replacements, additions, attachments, wiring, software, and accessories incorporated therein.

"Event of Default" means the occurrence of an event described in Section 10 hereof.

"Event of Loss" means the irreparable loss, damage, destruction, or theft to a Unit of Equipment or other event which renders a Unit of Equipment unfit or unavailable for use for any reason.

"Guarantor" means a parent company, affiliate or other entity or person who has furnished a guaranty of Lessee's obligations under the Master Lease.

"Impositions" means all taxes, fees, expenses and similar charges, including fees associated with the recycling of the Equipment, or other environmental or similar provisions issued by a governmental entity, which are assessed, imposed, incurred, or payable from the sale, staging, delivery, return, or disposal of the Equipment, excepting only taxes measured solely by the net income of Lessor or any franchise tax upon Lessor measured by Lessor's capital, capital stock or net worth.

"Lessor's Assignee" means an entity to whom Lessor has assigned or sold its right, title or interest in the Equipment, the Master Lease or a Schedule.

"Manufacturer" means the original equipment manufacturer or other vendor of the Equipment.

"Overdue Rate" means the lesser of one and one-half percent (1.5%) per month or the maximum rate permitted by law.

"Schedule" means an equipment schedule which incorporates all of the terms and conditions of this Master Lease.

"Soft Costs" means non-tangible equipment costs, including without limitation, finance costs, freight, Impositions, in-transit insurance, installation, deinstallation, maintenance, and software license fees.

"UCC" means the Uniform Commercial Code as adopted in the state referred to in Section 15(D).

"Unit" means an individual item of Equipment.

**SECTION 2. QUIET ENJOYMENT; ASSIGNMENT OF WARRANTIES; AFFILIATE USE.** Provided that no Event of Default has occurred and is continuing, Lessee will enjoy quiet possession and use of the Equipment without interference by Lessor or Lessor's Assignee. To the extent assignable, Lessor hereby assigns to Lessee all warranty rights which Lessor may have received from the Manufacturer of the Equipment, and Lessor will reasonably cooperate with Lessee in the enforcement of such warranties by Lessee. Any Affiliate may enter into a Schedule hereto, and the above-named Lessee will be jointly and severally responsible with the Affiliate for the obligations thereunder. Such Affiliate will be considered an additional Lessee for the purposes of such Schedule.

**SECTION 3. TERM.** On the Date of Acceptance, Lessee will be bound to its obligations for each Unit of Equipment. Each Schedule will continue through the Base Term and thereafter until terminated by either party upon at least ninety (90) days prior written notice to the other party, which notice may not be withdrawn without the consent of the other party. Lessor may from time to time order Equipment directly from the Manufacturer on behalf of Lessee. In such event, if the Manufacturer requires payment earlier than Lessee's execution and delivery of the required lease documentation, including, without limitation, the Schedule and Certificate of Acceptance, Lessor will submit such payment to the Manufacturer provided that Lessee agrees to pay interest on such payment at the Overdue Rate prorated on a per diem basis from the date Lessor is required to advance payment until the Date of Acceptance or other applicable date upon which Base Rent will first become due. If all required lease documentation is not executed by Lessee and delivered to Lessor within twenty-one (21) days after the earlier of the delivery of the Equipment or the advancement of funds by Lessor or such later date as the parties may agree in writing, Lessee will promptly upon request repay Lessor any amounts advanced by Lessor to the Manufacturer, together with the accrued per diem interest from the date of payment by Lessor until the date of Lessee's repayment, and the Schedule will be canceled.

**SECTION 4. RENT; TAXES.** The Base Rent for the Equipment will commence on the Base Term Date and will be due and payable without notice or demand at Lessor's address set forth above, or such other address as Lessor may designate in writing, and on the same day of each month until the Equipment is returned or purchased by Lessee as provided herein. In addition to Base Rent, Lessee will pay one-thirtieth (1/30) of the Base Rent (or one-ninetieth (1/90) of the Base Rent if paid quarterly) as additional pro rata rent from the Date of Acceptance until the Base Term Date payable on the Base Term Date. Lessor will report and remit to the appropriate taxing authority, and Lessee agrees to reimburse Lessor for, all Impositions. If Lessor pays any Impositions, Lessee will indemnify and reimburse Lessor upon receipt of Lessor's invoice for any such payment and any expenses incurred in the preparation and filing of any tax returns relating to such Impositions. Lessee's obligation to pay all amounts due and to become due under any Schedule will be absolute and unconditional and will not be subject to any abatement, reduction, defense, counterclaim, set-off, or recoupment, including without limitation, any present or future claim against Lessor, Manufacturer, or any other person or entity for any cause whatsoever. In furtherance of the foregoing, Lessee agrees that each Schedule constitutes a "finance lease" solely for the purposes of Article 2A of the UCC, and waives any other law, present or future, which permits Lessee to suspend or reduce payment. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY

AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY SECTIONS 2A-401 AND 2A-402, AND SECTIONS 2A-508 THROUGH 2A-522 OF THE UCC, PROVIDED HOWEVER, THAT THE FOREGOING WAIVER WILL IN NO EVENT IMPAIR OR DIMINISH ANY RIGHT OR REMEDY OTHERWISE CONFERRED UPON LESSEE HEREUNDER. Lessee hereby reserves, and Lessor will remain fully responsible for, all available money damages consistent herewith arising from a default of Lessor's obligations hereunder, which Lessee will pursue in an independent action brought within two (2) years after the cause of action first accrued. Any payment of Base Rent or other amount due under a Schedule which is not paid when due will accrue interest at the Overdue Rate.

**SECTION 5. USE.** Lessee will not, without the prior written consent of Lessor: (i) use the Equipment contrary to applicable law or regulation; (ii) remove a Unit from its location designated on the Schedule except if such Unit primarily functions as portable, provided such Unit will not be removed from the continental United States; or (iii) permit any alteration, addition to, or lien or claim upon the Equipment other than the Manufacturer's approved engineering changes, which Lessee will permit the prompt installation thereof. Lessee will, at its expense, maintain the Equipment under a standard maintenance contract with the Manufacturer (or other entity authorized by Lessor) and in good working order and appearance in accordance with the Manufacturer's specifications and anticipated use of the Equipment. Upon request, Lessee will grant Lessor, Lessor's Assignee or their agents, access to the Equipment and all records relating to the use and maintenance thereof, during normal business hours and subject to Lessee's reasonable security requirements. In the event Lessee purchases any Unit, Lessor will assign to Lessee any rights it may have in the software contained therein, except that such transaction will not be construed as a sale of such software; conversely, if Units are returned to Lessor, Lessee will so assign to, or replace for Lessor, any rights in any unexpired warranty, maintenance or software. Lessee will pay all costs related to delivery of the Equipment to and from Lessee. Soft Costs will be included in the Base Rent at the request of Lessee if such Soft Costs are included in the purchase price from the Manufacturer.

**SECTION 6. LOSS; INSURANCE.** Effective upon delivery and continuing until the Equipment is returned or purchased, Lessee assumes the risk and will be responsible for any Event of Loss with respect to any Unit of the Equipment. Lessee will provide Lessor with written notice of the occurrence of an Event of Loss within fifteen (15) days following such occurrence. The Schedule will continue in full force and effect without abatement of Base Rent and Lessee will ascertain from the Manufacturer whether such Unit can be repaired, and if so, cause such Unit to be promptly repaired. If the Event of Loss involves loss beyond repair or confiscation by governmental activity, Lessee will promptly pay to Lessor the Casualty Value attributable to such Unit, including all other amounts then due and payable by Lessee to Lessor pertaining to such Unit (including, without limitation, unbilled property taxes, if any) whereupon Lessee's obligation to pay further Base Rent for such Unit will cease. Lessee will, at its sole expense, cause the Equipment to be insured against all risks of loss or damage for not less than the Casualty Value, and will carry comprehensive general liability insurance in amounts of not less than $1,000,000.00 per occurrence, covering the Lessee, the Equipment and its use. After the date of shipment of the Equipment, Lessee will cause Lessor to be promptly provided with a certificate of insurance, in a form reasonably acceptable to Lessor. All policies for such insurance will name Lessor and Lessor's Assignee as loss payees and additional insureds as their interest may appear, and will provide Lessor with not less than thirty (30) days prior written notice of cancellation or material alteration. The proceeds of such insurance will be applied to the replacement or repair of the Equipment, or to payment of the Casualty Value, as the case may be. Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make claims for, receive payments of, and execute and endorse all documents, checks or drafts for, loss or damage under any such insurance coverage.

**SECTION 7. RETURN.** The Equipment will be deemed to have been returned when Lessee will have (i) given the advance written notice specified in Section 3 hereof, (ii) deinstalled, inspected and properly packed each Unit in accordance with the Manufacturer's recommendations and any return instructions generally furnished by Lessor, and (iii) delivered all Units to Lessor together with all documentation, accessories and peripherals, in the same good operating condition, repair and appearance as when accepted, ordinary wear and tear excepted, and certified eligible for the Manufacturer's maintenance. Lessee will return each Unit at such location as Lessor will designate within the continental U.S.

**SECTION 8. TITLE.** Title to the Equipment will remain in, and a security interest therein is hereby granted to, Lessor or Lessor's Assignee exclusively. All accessions, substitutions, replacement parts and additions (including, without limitation, all feature additions or model changes, as those terms are defined by the Manufacturer) which are incorporated in or affixed to the Equipment will be the personal property of Lessor. Title to any software attached to the Equipment will remain with the applicable licensor(s). Lessee will not acquire any rights to any such software except to the extent Lessee acquires the right to use the software as an end-user. It is Lessee's responsibility to obtain any required license from the licensor. Lessee will immediately notify Lessor of any pending or threatened claim of, and at Lessee's expense protect and defend Lessor's good and marketable title to the Equipment against all persons or entities claiming against or through Lessee, and will keep the Equipment free from any claim, legal process or encumbrance whatsoever, except those placed thereon by or through Lessor or Lessor's Assignee, or the inchoate claims of repairmen for payment not yet due. Lessee hereby (i) authorizes the filing of UCC financing statements specific to the Equipment, (ii) warrants that the Equipment at all times remains personal property and not a fixture, (iii) agrees to permit Lessor or Lessor's Assignee to affix ownership labels and/or identification marks to the Equipment, (iv) agrees to furnish audited annual and certified interim financial statements, and other material financial information as Lessor deems reasonably necessary, and (v) agrees to furnish such further documents and information as Lessor may require to protect or perfect its interests, or that of the Lessor's Assignee, including certificates of incumbency and authority.

**SECTION 9. DISCLAIMER. LESSOR MAKES NO WARRANTIES, GUARANTIES OR REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY KIND WITH RESPECT TO THE EQUIPMENT INCLUDING, WITHOUT LIMITATION, THE MERCHANTABILITY, VALUE, QUALITY, FITNESS FOR A PARTICULAR PURPOSE, COMPLIANCE WITH ANY APPLICABLE LAW, RULE, PATENT OR TRADEMARK, OR TREATMENT OF ANY SCHEDULE' FOR TAX OR ACCOUNTING PURPOSES, AND LESSEE WAIVES ANY REQUIRED NOTICE OF MONTH-TO-MONTH RENEWAL RENTS.** Lessee has selected the Equipment, including its size and design, and disclaims any reliance upon statements made by Lessor. Lessor will in no event be responsible or liable for any damages, including without limitation, indirect, special, incidental or consequential damages or lost profits, resulting from or relating to any Schedule or the Equipment.

**SECTION 10. DEFAULT.** The occurrence of any one of the following will constitute an Event of Default under a Schedule: (A) Lessee fails to pay Base Rent or other amounts due within five (5) days after the date upon which such amounts are due; (B) any information, representation, warranty or financial statement is false or misleading in any material manner as of the date it was given to Lessor; (C) Lessee fails to perform in any material manner any term, condition, covenant or obligation set forth in the Master Lease or any Schedule and such failure continues for a period of ten (10) days after written notice thereof is given to Lessee; (D) Lessee ceases doing business as a going concern or merges with, or a substantial portion of Lessee's assets are acquired by any other entity whose financial condition is less than that of Lessee, as determined by Lessor, or which entity, if acceptable to Lessor, fails to fully assume Lessee's obligations in a form acceptable to Lessor; (E) Lessee or one of its partners takes any act of dissolution or liquidation; (F) Lessee fails to timely replace, at least thirty (30) days prior to its expiration, any applicable letter of credit or other collateral furnished in connection with any Schedule; (G) Lessee (i) admits in writing its inability or unwillingness or fails to pay its debts as they become due, (ii) makes an assignment for the benefit of creditors, or (iii) applies for or acquiesces in the appointment of any receiver, trustee or other custodian for it or any substantial part of its property, and such appointment continues undischarged for a period of sixty (60) days; (H) any bankruptcy, reorganization, or other proceeding under any bankruptcy or similar law, dissolution or liquidation proceeding is commenced in respect of Lessee and remains undismissed for more than sixty (60) days; (I) the occurrence of a material adverse change in the financial condition or general creditworthiness of Lessee or Guarantor or withdrawal of any Guarantor; (J) an Event of Default by Lessee under any other Schedule; or (K) if Lessee or Guarantor is a natural person, the death of such person. If there is a Guarantor, Subsections (D) through (K) will apply to the Guarantor and a default thereunder by Guarantor will additionally constitute an Event of Default of Lessee.

**SECTION 11. REMEDIES.** Upon the occurrence of an Event of Default, Lessor may at its option, do any or all of the following: (A) declare immediately due and payable, as liquidated damages for loss of the bargain and not as a penalty, an amount equal to the Casualty Value set forth in the related Schedule, which amount together with all accrued and unpaid payments of Base Rent and any other sums due and payable up to and including the date on which Lessor receives the total of such amount, will be immediately payable by Lessee; (B) terminate the Schedule in default and take possession of any or all Units without any liability to any party for any damage, loss, cause of action or claim and, for this purpose, enter upon any premises where any Unit is located; (C) require Lessee to deliver any or all Units to Lessor in accordance with the return provisions hereof; (D) sell, dispose of, hold, use or re-lease any Unit as Lessor, in its sole discretion may determine by public or private disposition; or (E) proceed by appropriate court action at law or in equity to enforce performance or to recover damages from Lessee for any breach hereof. Upon any sale, re-lease or other disposition of any Unit, Lessor will apply to Lessee's obligations under the defaulted Schedule the amounts received. Lessor will only be obligated to apply the proceeds of any letter of credit furnished hereunder to the amount set forth in Subsection (A) above. The foregoing remedies in this Section and in Sections 6 and 7 are not intended to be exclusive, but each will be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity. If Lessor is required to enforce its remedies, Lessee will be liable for the deficiency balance payable under a defaulted Schedule, together with all costs, expenses, losses, and damages, including without limitation, all actual court costs, attorneys' fees and expenses incurred by Lessor, Lessor's Assignee or any other party in enforcing the terms and conditions of any Schedule or Lessor's interests, or the priority thereof, in any Schedule or the Equipment.

**SECTION 12. ASSIGNMENT.** Without consent of Lessee, Lessor may assign or sell its interests in the Master Lease, a Schedule or the Equipment to Lessor's Assignee. Upon Lessor's request, Lessee will acknowledge such assignment in a form customarily received by Lessor's Assignee and thereafter pay all Base Rent and other amounts due to Lessor's Assignee unconditionally as provided in this Master Lease. Lessee will not permit the Schedule so assigned to be amended or any of the terms or conditions thereof waived without the prior written consent of Lessor's Assignee, and Lessee will not require Lessor's Assignee to perform any obligation of Lessor under such Schedule. Any Lessor's Assignee may reassign its rights and interests. Lessor will not be relieved of any of its obligations hereunder by any assignment unless expressly assumed by Lessor's Assignee and consented to by Lessee. Lessee will not assign its interests without Lessor's prior written consent, which will not be unreasonably withheld, and in no event will Lessee be relieved of its obligations hereunder or under a Schedule.

**SECTION 13. INDEMNITY.** Lessee will indemnify and defend Lessor, and Lessor's Assignee, against any and all claims, liabilities, losses or damages (whether direct, indirect, special, incidental or consequential) including all court costs and reasonable attorneys' fees, arising in connection with any Unit or any Schedule, including without limitation, the ownership, selection, purchase, delivery, possession, use, operation, maintenance, leasing and return of the Equipment, or acts of Lessee in failing to maintain the Equipment in good repair, or any patent, trademark or copyright infringement.

**SECTION 14. LESSEE'S REPRESENTATIONS.** Lessee represents and warrants to Lessor that (A) the execution and performance of this Master Lease and each Schedule hereto have been and will be duly authorized by

Lessee and constitute an enforceable obligation against Lessee in accordance with its terms, subject to applicable bankruptcy or similar laws; (B) the Master Lease and each Schedule constitute legal, valid and binding agreements of the Lessee enforceable in accordance with their terms; (C) Lessee is duly organized and in good standing under the laws of its jurisdiction of organization and is and will continue to be duly qualified to do business and in good standing in any jurisdiction where any of the Equipment will be located; and (D) to the best of Lessee's knowledge, there are no suits, actions or proceedings pending before any court, agency, or other tribunal, which, if determined adversely to Lessee, would materially affect Lessee's ability to perform its obligations hereunder.

**SECTION 15. MISCELLANEOUS.** (A) Lessee will promptly deliver to Lessor any such additional instruments, information or assurances as Lessor or Lessor's Assignee may reasonably request concerning Lessee in order to enable Lessor to determine whether the covenants, terms and provisions of any Schedule have been complied with by Lessee, and to confirm and perfect this Master Lease and Lessor's rights hereunder. (B) Any notice or other communication relating to a Schedule will be in writing and delivered by any mode which requires the recipient to acknowledge receipt thereof by signature, and will be deemed to have been given upon receipt at the party's address above. (C) All representations, warranties, indemnities and covenants contained in this Master Lease will survive in full force and effect notwithstanding termination of Lessee's right of possession. (D) This Master Lease and each Schedule will be governed by, and construed in accordance with, the internal laws of the State of Illinois without regard to its conflict of laws principles and regardless of the location of the Equipment. Any action or proceeding arising out of or relating to any Schedule will be commenced exclusively in any state or federal court of competent jurisdiction located in Illinois and the parties consent to personal jurisdiction therein and to service by certified mail. **THE PARTIES HERETO WAIVE THE RIGHT TO TRIAL BY JURY TO THE EXTENT SUCH RIGHT MAY BE WAIVED.** (E) Where multiple Lessees have executed a Schedule or this Master Lease, their liability thereunder will be joint and several. (F) No negotiation or other process of the parties toward the purchase of the Equipment by Lessee on or after the expiration of the Base Term will have the effect of terminating any Schedule in any manner. (G) This Master Lease will be binding upon and inure to the benefit of the parties hereto and their respective successors, representatives and assigns. (H) This Master Lease and each Schedule may be executed in numbered counterparts, each counterpart constituting an original but all together one and the same instrument and contract. Only Counterpart No. 1 of each Schedule, together with a photocopy of this Master Lease, will constitute "chattel paper" under the UCC and no security interest in any Schedule may be created through the transfer of possession of any counterpart other than Counterpart No. 1. (I) Any provision of this Master Lease or any Schedule prohibited by, or unlawful or unenforceable under, any applicable law of any jurisdiction will be ineffective as to such jurisdiction to the extent of such prohibition, without invalidating the remaining provisions hereof or thereof. (J) This Master Lease and applicable Schedule constitute the entire agreement between Lessor and Lessee with respect to the subject Equipment, supersede any other oral or written agreement, and may be amended only by a writing signed by the parties. (K) Lessor may insert into a Schedule at any time serial numbers for the Equipment if and when available from the Manufacturer. (L) Time is of the essence and Lessor's failure or delay at any time to require strict performance by Lessee will not diminish or waive Lessor's right to demand strict compliance therewith or with any other provision. (M) The waiver of any default will not waive any other contemporaneous or subsequent default.

IN WITNESS WHEREOF, the parties hereto have executed this Master Lease on or as of the day and year first written above.

LESSOR:
RELATIONAL, LLC

BY: _____

NAME: MICHAEL J. ROSS

TITLE: SENIOR VICE PRESIDENT

mla.v10/06

LESSEE:
BESTEL COMMUNICATIONS, INC.

BY: _____

NAME: JOSEPH MACALUSO

TITLE: pres.

## CERTIFICATE OF INCUMBENCY

The undersigned V. President (title) of Bestel Communications, Inc., a Georgia Corporation (hereinafter "Company"), hereby certifies to Relational, LLC, its successors and assigns, as follows:

1. That he or she is the duly elected and acting officer in the aforesaid position in the Company and is responsible for maintaining the records, minutes and seal of the Company.

2. That pursuant to the Company's By-laws, as amended, the following named person(s) has been designated and appointed to the office(s) indicated below, that said person(s) continues to hold the office at this time and that the signatures below are genuine.

| NAME | SIGNATURE | TITLE |
|------|-----------|-------|
| Joseph Maraldo | _(signature)_ | Pres. |
| Carmine Cicala | Carmine Cicala | Director |
| Roger Aardema | Roger Aardema | V.P. Director |

3. That pursuant to the Company's By-laws, as amended, the person(s) designated to serve in the above-entitled capacity was or were given sufficient authority to act on behalf of and to bind the Company with respect to transactions involving leasing of equipment, including without limitation the execution of Master Equipment Lease Agreement dated June 26, 2007 between Relational, LLC, as Lessor, and Bestel Communications, Inc., as Lessee, and related documents, including acceptance certificates and guarantees, and that the execution by said person(s) of documents related to such transaction constitute the legally binding and enforceable obligations of the Company.

4. That pursuant to the Company's By-laws, as amended, the undersigned has the power and authority to execute this certificate on behalf of the Company and that he or she has so executed this certificate and set the seal (if applicable) of the Company as of this 26th day of June, 2007.

Bestel Communications, Inc.

By: _(signature)_

Name: JOE CASTELLANA

Title: V.P.

Affix Company
Seal Here

*(The Signer of This Certificate Cannot Be Listed Above as Authorized to Execute the Agreements.)*

(COI-01.03.06)

```
08CV3777
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE COX
MKH
```

# EXHIBIT B

# SCHEDULE 0001

*THIS IS COUNTERPART NO. ONE (1) OF TWO (2) SERIALLY NUMBERED, MANUALLY EXECUTED COUNTERPARTS OF THIS SCHEDULE. NO SECURITY INTEREST IN THIS SCHEDULE MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.*

**SCHEDULE NO. 001**
**DATED JULY 17, 2007**
**TO THE MASTER EQUIPMENT LEASE AGREEMENT**
**DATED JUNE 26, 2007 BETWEEN**
**RELATIONAL, LLC, LESSOR**
**AND**
**BESTEL COMMUNICATIONS, INC., LESSEE**

**LESSEE:**  **BESTEL COMMUNICATIONS, INC.**
1328 Surrey Lane
Marietta, GA 30008

**LESSOR:**  **RELATIONAL, LLC**
3701 Algonquin Road
Suite 600
Rolling Meadows, IL 60008
Attn: Maria Cazares

1. **Equipment:** Various new equipment more specifically described in the Certificate(s) of Acceptance with an aggregate cost of $74,970.00 (plus capacity for an additional 10% over such cost). Soft Costs will not exceed 10% of total cost of Equipment accepted by Lessee. Lessor's obligation to lease Equipment to Lessee under this Schedule is subject to no material adverse change in Lessee's financial condition.

| Qty. | Mfg./Model/Type/Description | Lease Rate Factor |
|---|---|---|
| 2 | Sliger Internet Servers CX 479H-07,<br>    Serial Nos. R1000000432 and R000000391<br>Windows NT Operating System<br>Processor 2AMD | 0.09247 |
| 2 | Hard Drives vertical | |
| | Software and soft costs | 0.096325 |

2. **Date of Acceptance and Base Rent:** Lessee agrees to confirm the Date of Acceptance for each item of Equipment by delivering to Lessor a Certificate of Acceptance executed by an authorized signatory, along with the vendor's invoice containing the Equipment location, description, serial number, manufacturer part number and cost. Lessee will pay as Base Rent the product of the applicable lease rate factor set forth above ("Lease Rate Factor") and the cost of the Equipment (or other cost), as shown on each Certificate of Acceptance.

3. **Base Term:** Twelve (12) consecutive quarters.

4. **Base Term Date:** The first day of the calendar month following the Date of Acceptance for all Units of Equipment to be leased hereunder.

5. **Lease Rate Factor:** The Lease Rate Factor(s) described in this Schedule has been calculated using an interest rate based on the 3-year U.S. Treasury Constant Maturity of 4.98% as described in the Federal

Reserve Statistical Release H.15 ("Treasury Rate"). If on the Date of Acceptance for the last Unit of Equipment to be leased hereunder there is any change in the Treasury Rate, Lessor will have the option of adjusting the Lease Rate Factor(s) in proportion to the change in Treasury Rate in order to preserve its economic yield.

6.  **Adjustments to Base Rent:** If the Date of Acceptance for the last Unit of Equipment hereunder occurs later than August 21, 2007 ("Outside Date"), or if the cost or configuration of the Equipment changes, Lessor may adjust the Lease Rate Factors to reflect any additional costs or expense resulting from those changes.

7.  **Casualty Value:** The Casualty Value is determined for each Unit of Equipment by multiplying the percentage stated opposite the quarter of the Base Term as set forth in Exhibit B by the Equipment cost as stated in the applicable Certificate of Acceptance, interpolating values if necessary. Until the return of all the Equipment under the Schedule, the percentage will be as stated as of the last quarter of the Base Term.

8.  **Miscellaneous:** To the extent required by applicable law, Lessee expressly acknowledges its duty to pay quarterly automatic renewal Rent upon expiration of the Schedule until the Equipment is returned or purchased in accordance herewith, waiving any contrary law or rule.

9.  **Return Provisions:** Lessee acknowledges that non-compliance with Lessor's return requirements directly affects Lessor's ability to remarket the Equipment, and Lessor may consider such non-compliance as an Event of Loss as to those Units affected. Lessee will return all Equipment at its expense in accordance with the terms of the Master Equipment Lease Agreement, this Schedule, and Lessor's standard return memorandum.

10. **Purchase Option:** As long as no Event of Default has occurred and is continuing, Lessee may upon ninety (90) days prior written notice to Lessor, purchase any or all of the Equipment upon the expiration of the Base Term of this Schedule for its then fair market value, plus applicable taxes (the "Purchase Price"). Fair market value will mean the price a similarly situated Lessee would pay in an arm's-length transaction for used equipment at retail. Lessee will pay Base Rent through the date Lessor receives payment of the Purchase Price, whereupon title to the Equipment will pass to Lessee free and clear of claims and liens created by Lessor or its assigns. THE EQUIPMENT IS BEING SOLD "AS-IS". **LESSOR MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.** Lessee will remain responsible for any unbilled personal property taxes and any other unpaid amounts. Lessee's exercise of this purchase option will not relieve Lessee of its Rent and other obligations under the Lease, which will continue as to each Unit of Equipment until return or purchase as provided herein.

11. **Renewal Option:** As long as no Event of Default has occurred and is continuing, Lessee may upon ninety (90) days prior written notice to Lessor, extend the Base Term of this Schedule covering any or all of the Equipment for a mutually agreed upon renewal term. In such event, Lessee will pay as Base Rent during the extended period the fair rental value of the Equipment. Fair rental value will mean that rent a similarly situated Lessee would pay at retail. Lessee will remain responsible for payment of Base Rent through the Date Lessee executes the renewal lease, and Lessee will pay for any software license renewal required by the Manufacturer. The Schedule will continue in effect after the extended period until terminated by either party upon not less than ninety (90) days prior written notice. Lessee's exercise of this renewal option will not relieve Lessee of its Rent and other obligations under the Lease, which will continue as to each Unit of Equipment until return or purchase thereof.

The terms and conditions of the Master Equipment Lease Agreement are hereby incorporated by reference into this Schedule. All initially capitalized terms not defined in this Schedule will have the meanings ascribed to them in the Master Equipment Lease Agreement. If specific provisions of this Schedule are inconsistent with the Master Equipment Lease Agreement, this Schedule will control. The parties reaffirm all of the terms and conditions of the Master Equipment Lease Agreement (including, without limitation, the representations and warranties set forth in the Master Equipment Lease Agreement) except as modified by this Schedule.

IN WITNESS WHEREOF, the parties hereto have caused this Schedule to be executed by their duly authorized officers as of the day and date set forth above.

Lessor:                                         Lessee:
**RELATIONAL, LLC**                              **BESTEL COMMUNICATIONS, INC.**

By: _____                   By: _____
       MICHAEL J. ROSS
Title:   SENIOR VICE PRESIDENT                   Title: _____

ORIGINAL

**CERTIFICATE OF ACCEPTANCE NO. 001**

This Certificate of Acceptance is executed pursuant to Schedule No. 001 to the Master Equipment Lease Agreement dated June 26, 2007 between Relational, LLC ("Lessor") and Bestel Communications, Inc. ("Lessee").

1. **EQUIPMENT:**      See Exhibit A attached hereto.

2. **TOTAL EQUIPMENT COST:**      $74,970.00

3. **BASE RENT:** $6,932.48 per quarter in advance

4. **DATE OF ACCEPTANCE:**      August 1, 2007

5. **BASE TERM DATE:**  August 1, 2007

6. **REPRESENTATIONS OF LESSEE:**

   Lessee certifies that all items of the Equipment described herein have been delivered to the location(s) indicated in Paragraph 1 above, tested and inspected by Lessee, found to be in good order, and accepted as items of the Equipment under the Lease, all on the Date of Acceptance.

   Lessee hereby represents and warrants to Lessor that (i) no Event of Default or event which, with the giving of notice or the lapse of time, or both, would become such an Event of Default under the Lease has occurred and is continuing, and (ii) Lessee has obtained, and there are in full force and effect, any insurance policies with respect to the Equipment required to be obtained under terms of the Lease.

Lessee:
**BESTEL COMMUNICATIONS, INC.**

By _____

Title: _____

Page 1 of 1

**EXHIBIT A**
**ATTACHED TO SCHEDULE NO. 001**
**BETWEEN RELATIONAL, LLC, AS LESSOR AND**
**BESTEL COMMUNICATIONS, INC., AS LESSEE**

Vendor:    **Light Rider Solutions, LLC**

| Invoice # | PO # | Qty | Mfg | Product # | Model | Equipment Description | Unit Price | Total Cost | RENT |
|-----------|------|-----|-----|-----------|-------|----------------------|------------|------------|------|
| 2101 | | 2 | SLIGER DESIGNS | CX479H-07 | CX479H-07 | SLIGER CX 479H-07  XEON/3.5 1GB 72GB 2 x XEON P3500, 3.5 GHz, RAM 1 GB, HD 72 GB, | $37,485.00 | $74,970.00 | $6,932.48 |

**Serial #s**
R1000000391

PO #    R1000000391

Invoice #    R1000000432

**Equipment Location :**

530 W 6th Street, 4th Floor Meet Me Room Cages 116-119
LOS ANGELES, CA  90017

Total for Location    $74,970.00

Rent for Location    $6,932.48 Quarterly

EXHIBIT B

CASUALTY VALUE TABLE

TO SCHEDULE NO. 001
DATED AS OF JULY 17, 2007 BETWEEN
RELATIONAL, LLC ("LESSOR")
AND BESTEL COMMUNICATIONS, INC. ("LESSEE")

The Casualty Value for each Unit of Equipment shall be the amount equal to the product of the original Equipment cost as of the Date of Acceptance plus any other amounts financed by Lessor (including but not limited to freight and capitalized taxes) multiplied by the percentage indicated below opposite the period of time in which such loss, damage or destruction occurs.

| After Quarter | % of Cost | After Quarter | % of Cost |
|---|---|---|---|
| 1 | 115.00% | 7 | 74.09% |
| 2 | 108.18% | 8 | 67.27% |
| 3 | 101.36% | 9 | 60.45% |
| 4 | 94.55% | 10 | 53.64% |
| 5 | 87.73% | 11 | 46.82% |
| 6 | 80.91% | 12 | 40.00% |

Until the Equipment has been surrendered to Lessor as provided in the Master Equipment Lease Agreement, the Casualty Value percentage shall be the last stated value above.

```
08CV3777
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE COX
MKH
```

# EXHIBIT C

# SCHEDULE 002

ORIGINAL

*THIS IS COUNTERPART NO. ONE (1) OF TWO (2) SERIALLY NUMBERED, MANUALLY EXECUTED COUNTERPARTS OF THIS SCHEDULE. NO SECURITY INTEREST IN THIS SCHEDULE MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.*

**SCHEDULE NO. 002**
**DATED AUGUST 16, 2007**
**TO THE MASTER EQUIPMENT LEASE AGREEMENT**
**DATED JUNE 26, 2007 BETWEEN**
**RELATIONAL, LLC, LESSOR**
**AND**
**BESTEL COMMUNICATIONS, INC., LESSEE**

**LESSEE:    BESTEL          LESSOR:    RELATIONAL, LLC**
**            COMMUNICATIONS, INC.**
            1328 Surrey Lane                    3701 Algonquin Road
            Marietta, GA 30008                  Suite 600
                                                Rolling Meadows, IL 60008
                                                Attn: Maria Cazares

1.    **Equipment:** Various new equipment more specifically described in the Certificate(s) of Acceptance with an aggregate cost of $83,363.00 (plus capacity for an additional 10% over such cost). Soft Costs will not exceed 10% of total cost of Equipment accepted by Lessee. Lessor's obligation to lease Equipment to Lessee under this Schedule is subject to no material adverse change in Lessee's financial condition.

| **Qty.** | **Mfg./Model/Type/Description** | **Lease Rate Factor** |
|---|---|---|
|  | Networking Equipment | 0.09247 |

2.    **Date of Acceptance and Base Rent:** Lessee agrees to confirm the Date of Acceptance for each item of Equipment by delivering to Lessor a Certificate of Acceptance executed by an authorized signatory, along with the vendor's invoice containing the Equipment location, description, serial number, manufacturer part number and cost. Lessee will pay as Base Rent the product of the applicable lease rate factor set forth above ("Lease Rate Factor") and the cost of the Equipment (or other cost), as shown on each Certificate of Acceptance.

3.    **Base Term:** Twelve (12) consecutive quarters.

4.    **Base Term Date:** The first day of the calendar month following the Date of Acceptance for all Units of Equipment to be leased hereunder.

5.    **Lease Rate Factor:** The Lease Rate Factor(s) described in this Schedule has been calculated using an interest rate based on the 3-year U.S. Treasury Constant Maturity of 4.54% as described in the Federal Reserve Statistical Release H.15 ("Treasury Rate"). If on the Date of Acceptance for the last Unit of Equipment to be leased hereunder there is any change in the Treasury Rate, Lessor will have the option of adjusting the Lease Rate Factor(s) in proportion to the change in Treasury Rate in order to preserve its economic yield.

6. **Adjustments to Base Rent:** If the Date of Acceptance for the last Unit of Equipment hereunder occurs later than September 25, 2007 ("Outside Date"), or if the cost or configuration of the Equipment changes, Lessor may adjust the Lease Rate Factors to reflect any additional costs or expense resulting from those changes.

7. **Casualty Value:** The Casualty Value is determined for each Unit of Equipment by multiplying the percentage stated opposite the quarter of the Base Term as set forth in Exhibit B by the Equipment cost as stated in the applicable Certificate of Acceptance, interpolating values if necessary. Until the return of all the Equipment under the Schedule, the percentage will be as stated as of the last quarter of the Base Term.

8. **Miscellaneous:** To the extent required by applicable law, Lessee expressly acknowledges its duty to pay quarterly automatic renewal Rent upon expiration of the Schedule until the Equipment is returned or purchased in accordance herewith, waiving any contrary law or rule.

9. **Return Provisions:** Lessee acknowledges that non-compliance with Lessor's return requirements directly affects Lessor's ability to remarket the Equipment, and Lessor may consider such non-compliance as an Event of Loss as to those Units affected. Lessee will return all Equipment at its expense in accordance with the terms of the Master Equipment Lease Agreement, this Schedule, and Lessor's standard return memorandum.

10. **Purchase Option:** As long as no Event of Default has occurred and is continuing, Lessee may upon ninety (90) days prior written notice to Lessor, purchase any or all of the Equipment upon the expiration of the Base Term of this Schedule for its then fair market value, plus applicable taxes (the "Purchase Price"). Fair market value will mean the price a similarly situated Lessee would pay in an arm's-length transaction for used equipment at retail. Lessee will pay Base Rent through the date Lessor receives payment of the Purchase Price, whereupon title to the Equipment will pass to Lessee free and clear of claims and liens created by Lessor or its assigns. THE EQUIPMENT IS BEING SOLD "AS-IS". **LESSOR MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.** Lessee will remain responsible for any unbilled personal property taxes   and any other unpaid amounts. Lessee's exercise of this purchase option will not relieve Lessee of its  Rent and other obligations under the Lease, which will continue as to each Unit of Equipment until return or purchase as provided herein.

11. **Renewal Option:** As long as no Event of Default has occurred and is continuing, Lessee may upon  ninety (90) days prior written notice to Lessor, extend the Base Term of this Schedule covering any or all of the Equipment for a mutually agreed upon renewal term.  In such event, Lessee will pay as Base Rent during the extended period the fair rental value of the Equipment. Fair rental value will mean that rent a similarly situated Lessee would pay at retail.  Lessee will remain responsible for payment of Base Rent through the Date Lessee executes the renewal lease, and Lessee will pay for any software license renewal required by the Manufacturer.  The Schedule will continue in effect after the extended period until terminated by either party upon not less than ninety (90) days prior written notice.  Lessee's exercise of this renewal option will not relieve Lessee of its Rent and other obligations under the Lease, which will continue as to each Unit of Equipment until return or purchase thereof.

The terms and conditions of the Master Equipment Lease Agreement are hereby incorporated by reference into this Schedule.  All initially capitalized terms not defined in this Schedule will have the meanings ascribed to them in the Master Equipment Lease Agreement.  If specific provisions of this Schedule are

inconsistent with the Master Equipment Lease Agreement, this Schedule will control. The parties reaffirm all of the terms and conditions of the Master Equipment Lease Agreement (including, without limitation, the representations and warranties set forth in the Master Equipment Lease Agreement) except as modified by this Schedule.

IN WITNESS WHEREOF, the parties hereto have caused this Schedule to be executed by their duly authorized officers as of the day and date set forth above.

Lessor:                                                    Lessee:
**RELATIONAL, LLC.**                            **BESTEL COMMUNICATIONS, INC.**

By: _____                By: _____

Title: _____                 Title: _____
MICHAEL J. ROSS
SENIOR VICE PRESIDENT

ORIGIN. .

## CERTIFICATE OF ACCEPTANCE NO. 001

This Certificate of Acceptance is executed pursuant to Schedule No. 002 to the Master Equipment Lease Agreement dated June 26, 2007 between Relational, LLC ("Lessor") and Bestel Communications, Inc. ("Lessee").

1. **EQUIPMENT:**    See Exhibit A attached hereto.

2. **TOTAL EQUIPMENT COST:**    $83,363.00

3. **BASE RENT:** $7,708.58 per quarter in advance

4. **DATE OF ACCEPTANCE:**    August 1, 2007

5. **BASE TERM DATE:**   August 1, 2007

6. **REPRESENTATIONS OF LESSEE:**

   Lessee certifies that all items of the Equipment described herein have been delivered to the location(s) indicated in Paragraph 1 above, tested and inspected by Lessee, found to be in good order, and accepted as items of the Equipment under the Lease, all on the Date of Acceptance.

   Lessee hereby represents and warrants to Lessor that (i) no Event of Default or event which, with the giving of notice or the lapse of time, or both, would become such an Event of Default under the Lease has occurred and is continuing, and (ii) Lessee has obtained, and there are in full force and effect, any insurance policies with respect to the Equipment required to be obtained under terms of the Lease.

Lessee:
BESTEL COMMUNICATIONS, INC.

By: _____

Title: _____

Page 1 of 2

EXHIBIT A
ATTACHED TO SCHEDULE NO. 002
BETWEEN RELATIONAL, LLC, AS LESSOR AND
BESTEL COMMUNICATIONS, INC., AS LESSEE

Vendor:    Light Rider Solutions, LLC

| Invoice # | PO # | Qty | Mfr | Product # | Model | Equipment Description | Unit Cost | Total Cost | RSMV |
|---|---|---|---|---|---|---|---|---|---|
| 2309 | | 1 | CISCO | CISCO7507 | 7507 | CISCO 7507 7SLOT 2CYBUS 1RSP2 1 P/S RTR | $ 49,876.00 | $ 49,876.00 | $ 4,334.90 |
| 2309 | | 1 | CISCO | PA-2T3== | | 2FT T3 SERIAL PORT ADPT | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 1 | CISCO | PA-MC-8TE1+= | | 8P MULTICHANNEL T1/E1 8PRI PR ADPT | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 1 | CISCO | PA-POS-OC3M | | 1PT PACKET/SONET OC3V STM1 MM PT ADPT | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 1 | CISCO | PA-8E= | | CISCO 7200 8PT ETH RJ45 ADPT | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 1 | CISCO | PA-8T-V35= | | CISCO 7200 8PT SER V.35 I/F | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 1 | MOTOROLA | CXP8216 | | MOTOROLA CPX 8216 VOIP GATEWAY REDUNDANT POWER | $ 36,484.00 | $ 36,484.00 | $ 3,373.68 |
| 2309 | | 1 | MOTOROLA | MPC-7410 | | MPC7410 MICROPROCESSOR BOARD | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 1 | MOTOROLA | CPCI-6020-MC | | MOTOROLA 6020 TRANSITION MODULE | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 1 | MOTOROLA | RS-310-RC | | MOTOROLA RACK MOUNT 13N, | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 4 | MOTOROLA | CPV-6350 | | MOTOROLA T-BOARD STORE FRONT BOARDS | $ 0.00 | $ 0.00 | $ 0.00 |
| 2309 | | 1 | MOTOROLA | 6908 | | MOTOROLA CPU BOARDS 2 x P2L | $ 0.00 | $ 0.00 | $ 0.00 |

Page 2 of 2

EXHIBIT A
ATTACHED TO SCHEDULE NO. 002
BETWEEN RELATIONAL, LLC, AS LESSOR AND
BESTEL COMMUNICATIONS, INC., AS LESSEE

Equipment Location :

630 W 6th Street, 4th Floor Meet Me Room Cages 116-119
LOS ANGELES, CA 90017

Total for Location    $ 83,383.09
                      Rent for Location

$7,708.68    Quarterly

EXHIBIT B

CASUALTY VALUE TABLE

TO SCHEDULE NO. 002
DATED AS OF AUGUST 16, 2007 BETWEEN
**RELATIONAL, LLC ("LESSOR")**
**AND BESTEL COMMUNICATIONS, INC. ("LESSEE")**

The Casualty Value for each Unit of Equipment shall be the amount equal to the product of the original Equipment cost as of the Date of Acceptance plus any other amounts financed by Lessor (including but not limited to freight and capitalized taxes) multiplied by the percentage indicated below opposite the period of time in which such loss, damage or destruction occurs.

| After Quarter | % of Cost | After Quarter | % of Cost |
|---|---|---|---|
| 1 | 115.00% | 7 | 74.09% |
| 2 | 108.18% | 8 | 67.27% |
| 3 | 101.36% | 9 | 60.45% |
| 4 | 94.55% | 10 | 53.64% |
| 5 | 87.73% | 11 | 46.82% |
| 6 | 80.91% | 12 | 40.00% |

Until the Equipment has been surrendered to Lessor as provided in the Master Equipment Lease Agreement, the Casualty Value percentage shall be the last stated value above.

```
08CV3777
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE COX
MKH
```

# EXHIBIT D

# UCC FILINGS

FILE:   007-2007-12873

FILED
SUPERIOR COURT
BARROW COUNTY, GA

2007 JUN 28  AM 11: 59

GLORIA M. WALL  CLERK

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Phone:(880) 331-3282  Fax: (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

9963 RELATIONAL FUND

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

11487539

GAGA

File with: BARROW, GA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Bestel Communications, Inc. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1328 Surrey Lane | Marietta | GA | 30008 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORPORATION | GA | 0252821  ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME OF TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Relational, LLC | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3701 Algonquin Road | Rolling Meadows | IL | 60008 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All present and future Goods, including but not limited to various computer equipment, personal computers, laptops, peripherals and software, and any replacement, substitution, addition, attachment, modification, update, revision, enhancement, accessory, insurance proceeds and the cash proceeds of any Goods, wherever located, leased by Relational, LLC ("Lessor") to Bestel Communications, Inc.("Debtor/Lessee") pursuant to the Master Equipment Lease Agreement dated June 26, 2007 between Lessor and Debtor/Lessee. This UCC filing is intended to be for informational and precautionary purposes only and to give notice of Lessor's ownership of the Goods and the existence of a true lease. If any transaction entered into under the Master Equipment Lease Agreement is deemed to be other than a true lease, then it is the intention of the parties that Lessor has a properly perfected security interest under the Uniform Commercial Code in the Goods subject to the Master Lease, or any Schedule entered into pursuant thereto, now or hereafter.

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE) (optional) | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| 11487539 | | 002 | | BSTL-UNIV | | |

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071  Tel (800) 331-3282

FILE: 007-2007-18663

FILED
SUPERIOR COURT
BARROW COUNTY, G:

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2007 SEP 14 PM 1:24

GLORIA M. WALL, CLERK

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone (800) 331-3282    Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Mailing Address)  9963 RELATIONAL FUND

> UCC Direct Services        12128393
> P.O. Box 29071
> Glendale, CA 91209-9071    GAGA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
007-2007-12873  06/28/07  BARROW

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☒ **ASSIGNMENT (full or PARTIAL ):** Give name of assignee in item 7a or 7b and address of assignee in 7c; also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable)

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | Bestel Communications, Inc. | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | MB Financial Bank, N.A. | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6111 N. River Road | Rosemont | IL | 60018 | |

| 7d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☒ assigned.

All of the Equipment and personal property and all modifications and additions thereto and replacements and substitutions therefor, in whole or in part, including the insurance proceeds thereof, under Lease Schedule No. 001 (see Exhibit A thereto, attached) leased or to be leased by Lessor to Lessee pursuant to the Master Equipment Lease Agreement dated June 26, 2007 between Relational, LLC (Lessor) and Bestel Communications, Inc. (Debtor/Lessee). See attached Schedule Exhibit.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | Relational, LLC | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

**10. OPTIONAL FILER REFERENCE DATA**
12128393 Debtor Name: Bestel Communications, Inc. 001  BSTL-001.to.MB.09.07

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

Prepared by UCC Direct Services, P.O. Box 29071 Glendale, CA 91209-9071 Tel (800) 331-3282

FILE: 007-2007-18663

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**#1. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)**

007-2007-12873   06/28/07   BARROW

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as Item 9 on Amendment form)**

| 12a. ORGANIZATION'S NAME |
|---|
| Relational, LLC |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

**13. Use this space for additional information**

Bestel Communications, Inc.
- 1328 Surrey Lane . Marietta, GA  30008
SP: Relational, LLC ; 3701 Algonquin Road, Rolling Meadows, IL  60008

FILED
SUPERIOR COURT
BARROW COUNTY, GA

2007 SEP 14  PM 1: 24

GLORIA U. WALL, CLERK

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Prepared by UCC-Direct Services, Inc. P.O. Box 29071
Glendale, CA  91209-9071 Tel (800) 331-3282

FILE: 007-2007-18663

FILED
SUPERIOR COURT
BARROW COUNTY GA

2007 SEP 14 PM 1: 24

GLORIA M. WALL CLERK

# EXHIBIT A TO UCC FINANCING STATEMENT



This financing statement is intended as notice of the existence of the Equipment Schedule No. 001 subject to the Master Lease Agreement dated June 26, 2007 between Secured Party, as Lessor, and Debtor, as Lessee, covering the equipment described below (the "Equipment"). In the event that perfection of a security interest is required by law to protect the interest of Lessor or its assignee in the Lease and the Equipment (collectively the "Property"), then the filing of this financing statement is intended to perfect whatever security interest Lessor or its assignee may have in the Property. Nothing contained in this financing statement shall be construed to give Lessee any right to sell, sublease or otherwise dispose of the Property.

This financing statement covers the Property, wherever located, including without limitation, the Equipment described more fully below including any attachments, substitutions, replacements, upgrades, accessions or additions thereto, and any or all cash or non-cash proceeds of any or all of the Property:

| Qty | Description |
|-----|-------------|
| 2 | SLIGER CX 479H-07 XEON/3.5 1GB 72GB |
| | 2 x XEON P3500, 3.5 GHz, RAM 1 GB, HD 72 GB. |

Serial #s
R1000000432                R10000000391



007 -2007-25313

FILE: 007- 007-25313

FILED
SUPERIOR COURT
BARROW COUNTY GA

2007 DEC 12 PM 1:58

GLORIA M. WALL, CLERK

# UCC FINANCING STATEMENT AMENDMENT
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone (800) 331-3282    Fax (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO: (Name and Mailing Address)** 9963 RELATIONAL FUND

UCC Direct Services    **12899447**
P.O. Box 29071
Glendale, CA 91209-9071    **GAGA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
007-2007-12873   06/28/07   BARROW

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT (full or PARTIAL):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Bestel Communications, Inc. | | | |

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Key Equipment Finance Inc. | | | |

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1000 South McCaslin Boulevard | Superior | CO | 80027 | |

| 7d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☒ assigned.

All of the Equipment and personal property and all modifications and additions thereto and replacements and substitutions therefor, in whole or in part, including the insurance proceeds thereof, under Lease Schedule No. 002 (see Exhibit A thereto, attached) leased or to be leased by Lessor to Lessee pursuant to the Master Equipment Lease Agreement dated June 26, 2007 between Relational, LLC (Lessor) and Bestel Communications, Inc. (Debtor/Lessee). See attached Schedule Exhibit.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.**

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Relational, LLC | | | |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. **OPTIONAL FILER REFERENCE DATA**
12899447 Debtor Name: Bestel Communications, Inc. 001 BSTL-002.to.KEY.121207

Prepared by UCC Direct Services, P.O. Box 29071 Glendale, CA 91209-9071 Tel (800) 331-3282

007 - 2007-25313

FILE: 007-2007-25313

FILED
SUPERIOR COURT
BARROW COUNTY GA

2007 DEC 12 PM 1:58

GLORIA M. WALL, CLERK

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

007-2007-12873   06/28/07   BARROW

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as Item 9 on Amendment form)

| | 12a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| | Relational, LLC | | |
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
| | | | |

13. Use this space for additional information
Bestel Communications, Inc.
- 1328 Surrey Lane , Marietta, GA  30008
SP: Relational, LLC ; 3701 Algonquin Road, Rolling Meadows, IL  60008

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Prepared by JCC-Direct Services, Inc. P.O. Box 29071



FILED
SUPERIOR COURT
BARROW COUNTY, GA
Page 1 of 1

# EXHIBIT A TO UCC FINANCING STATEMENT

07 DEC 12 PM 1:58

GLORIA M. WALL, CLERK

This financing statement is intended as notice of the existence of the Equipment Schedule No. 002 subject to the Master Lease Agreement dated June 26, 2007 between Secured Party, as Lessor, and Debtor, as Lessee, covering the equipment described below (the "Equipment"). In the event that perfection of a security interest is required by law to protect the interest of Lessor or its assignee in the Lease and the Equipment (collectively the "Property"), then the filing of this financing statement is intended to perfect whatever security interest Lessor or its assignee may have in the Property. Nothing contained in this financing statement shall be construed to give Lessee any right to sell, sublease or otherwise dispose of the Property.

This financing statement covers the Property, wherever located, including without limitation, the Equipment described more fully below including any attachments, substitutions, replacements, upgrades, accessions or additions thereto, and any or all cash or non-cash proceeds of any or all of the Property:

| Qty | Description |
|-----|-------------|
| 1 | CISCO 7507 7SLOT 2CYBUS 1RSP2 1 P/S RTR |
| 1 | 2PT T3 SERIAL PORT ADPT |
| 1 | 8P MULTICHANNEL T1/E1 8PRI PR ADPT |
| 1 | 1PT PACKET/SONET OC3/ STM1 MM PT ADPT |
| 1 | CISCO 7200 8PT ETH RJ45 ADPT |
| 1 | CISCO 7200 8PT SER V.35 I/F |
| 1 | MOTOROLA CPX 8216 VOIP GATEWAY REDUNDANT POWER |
| 1 | MPC7410 MICROPROCESSOR BOARD |
| 1 | MOTOROLA 6020 TRANSITION MODULE |
| 1 | MOTOROLA RACK MOUNT 15IN. |
| 4 | MOTOROLA T-BOARD STORE FRONT BOARDS |
| 1 | MOTOROLA CPU BOARDS 2 x PIII |